THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAYDEN MICHAEL CIARMATARO, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [35] DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 1:21-cr-00042-DBB <br><br> District Judge David Barlow |

Jayden Michael Ciarmataro was indicted for violation of 18 U.S.C. § 922(n),[1] which prohibits any person under indictment for a felony from shipping or receiving a firearm in interstate commerce.[2] Before the court is Mr. Ciarmataro's motion to dismiss the Indictment under the Second Amendment.[3] For the reasons below, the court denies the motion.

## BACKGROUND

On January 6, 2020, Mr. Ciarmataro was charged in state court with possession of a firearm by a restricted person, possession of a controlled substance, and possession of drug paraphernalia.[4] Possession of a firearm by a restricted person is a felony under Utah law.[5] This firearms charge, however, is not at issue. Mr. Ciarmataro later received another weapon while

---

[1] Indictment, ECF No. 1.
[2] 18 U.S.C. § 922(n).
[3] Mot. to Dismiss and Strike Trial ("Def.'s Mot."), ECF No. 35; Mem. in Support of Mot. to Dismiss ("Def.'s Mem."), ECF No. 45.
[4] *See* Information, *Utah v. Ciarmataro*, No. 201700022 (Utah Dist. Ct., Jan. 6, 2020).
[5] Utah Code § 76-10-503(3)(a).

still under the felony information in state court.[6] Later, he was indicted in federal court under 18 U.S.C. § 922(n).[7] Now, Mr. Ciarmataro moves to dismiss his federal indictment, arguing that 18 U.S.C. § 922(n) is unconstitutional on its face and as applied to Mr. Ciarmataro under the Second Amendment.[8] The government responded, and Mr. Ciarmataro did not reply.

## STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[9] "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'"[10] This means that "courts may entertain motions that require it to answer only pure questions of law."[11]

## DISCUSSION

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[12] In *District of Columbia v. Heller*, the Supreme Court held that "the Second Amendment conferred an individual right to keep and bear arms."[13] *Heller* found that a law prohibiting

---

[6] *See* Indictment. As used in 18 U.S.C. § 922(n), the term "indictment" means "an indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." 18 U.S.C. § 921(a)(14).
[7] *See* Indictment.
[8] Def.'s Mot. 1; Def.'s Mem 3–4.
[9] Fed. R. Crim. P. 12(b)(1).
[10] *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).
[11] *Id.* at 1260.
[12] U.S. Const. amend II.
[13] 554 U.S. 570, 595 (2008).

handgun possession in the home unconstitutional under the Second Amendment.[14] The Court, however, made clear that the individual right to bear arms is "not unlimited."[15] Namely, the *Heller* Court observed that "prohibitions on carrying concealed weapons were lawful," as were laws prohibiting "the possession of firearms by felons and the mentally ill" and "laws forbidding the carrying of firearms in sensitive places[.]"[16]

Next, in *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Court clarified that means-end scrutiny was inappropriate to address whether a restriction on arms violated the Second Amendment.[17] Instead, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."[18] Applying this standard, the Court then held that a law that required a special showing in order to obtain a concealed carry permit was unconstitutional.[19]

Most recently, in *United States v. Rahimi*, the Court observed that "some courts have misunderstood the methodology" of *Bruen*.[20] The Court stressed that the government need not come forward with evidence of an identical law; instead, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit[.]"[21] Put another

---

[14] *Id.* at 635.
[15] *Id.* at 626–27; *accord Rahimi*, 602 U.S. at 690 (quoting *Heller*, 554 U.S. at 626–27 n.26).
[16] *Heller*, 554 U.S. at 626.
[17] 597 U.S. 1, 18–19.
[18] *Id.* at 24.
[19] *Id.* at 71.
[20] *Rahimi*, 602 U.S. at 691; *see also id.* at 691–92 ("[*Heller* and *Bruen*] were not meant to suggest a law trapped in amber. As we explained in *Heller*, for example, the reach of the Second Amendment is not limited only to those arms that were in existence at the founding. . . . By that same logic, the Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers.").
[21] *Id.* at 692 (quoting *Bruen*, 597 U.S. at 29).

way, the government must "identify a well-established and representative historical *analogue*, not a historical *twin*."[22] In evaluating whether a law is sufficiently analogous courts may consider "[w]hy and how the regulation burdens the right."[23] Looking to historical analogues that showed a history and tradition of disarming individuals who pose a clear threat of physical violence, the Court upheld the constitutionality of 18 U.S.C. § 922(g)(8), which "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual."[24]

The Tenth Circuit Court of Appeals has not opined on the constitutionality of § 922(n). Therefore, the court applies *Bruen*'s test, as it was clarified by *Rahimi*, to § 922(n).

**I.    Plain Text**

The Government suggests that the conduct prohibited by § 922(n) falls outside the plain text of the Second Amendment because only "law-abiding" and "responsible" individuals are part of "the people" granted protection by the Second Amendment.[25]

The Second Amendment protects only the right of "the people" to keep and bear arms.[26] In *Heller*, the Court found that this term "unambiguously refers to all members of the political community, not an unspecified subset."[27] But, as the government points out, *Heller* and *Bruen* also observed that the Second Amendment protects "law-abiding citizen[s]."[28] Some courts

---

[22] *Bruen*, 597 U.S. at 30.
[23] *Rahimi*, 602 U.S. at 692.
[24] *Id.* at 684–685, 693.
[25] Gov.'s Resp. 6–7.
[26] U.S. Const. amend. II.
[27] *Heller*, 554 U.S. at 580.
[28] *Bruen*, 597 U.S. at 8; *see also id.* 15, 26, 29, 31, 38, 60, 70–71; *Heller*, 554 U.S. at 625; *id.* at 635.

following *Heller* and *Bruen* have held that certain classes of individuals fall outside the scope of "the people" protected by the Second Amendment—namely, aliens who have entered the United States unlawfully.[29] Other courts to have considered whether the term "the people" covers those under felony indictment have held that it does.[30]

Assuming *arguendo* that only law-abiding citizens are part of "the people" protected by the Second Amendment, the Government does not explain how the fact of a felony indictment is sufficient on its own to discharge an individual from "the people." Such an individual has not yet been convicted of a crime. The Government has failed to show that the conduct prohibited by § 922(n) does not fall under the plain text of the Second Amendment.[31] Accordingly, the government must justify the regulation by showing it comports with this nation's history and tradition of firearm regulation.

## II. History and Tradition

To reiterate, the *Bruen* inquiry does not require a "dead ringer," but instead requires only that the contemporary regulation poses a "comparable burden" on the right and is "comparably justified" as a historical analogue.[32] Following *Bruen*, courts have split on whether § 922(n) violates the Second Amendment. While most courts have upheld § 922(n) as constitutional,[33]

---

[29] *E.g.*, *United States v. Sitladeen*, 64 F.4th 978, 983–87 (8th Cir. 2023); *United States v. Portillo-Munoz*, 643 F.3d 437, 440–42 (5th Cir. 2011); *United States v. Carpio-Leon*, 701 F.3d 974, 979 (4th Cir. 2012). *But see United States v. Jimenez-Shilon*, 34 F.4th 1042, 1045–46 (11th Cir. 2022) (avoiding the issue); *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021) (avoiding the issue).
[30] *See United States v. Stambaugh*, 641 F.Supp.3d 1185, 1189 (W.D. Okla. 2022); *United States v. Hicks*, 649 F.Supp.3d 357, 361 (W.D. Tex. 2023); *United States v. Quiroz*, 629 F.Supp.3d 511, 523–24 (W.D. Tex. 2022).
[31] The government does not argue that the prohibitions in § 922(n)—namely receiving a firearm that was shipped in interstate commerce—do not implicate the substantive right to "keep and bear Arms."
[32] *Bruen*, 597 U.S. at 30.
[33] *United States v. Kays*, 624 F.Supp.3d 1267–68 (W.D. Okla. 2022); *United States v. Bartucci*, 658 F.Supp.3d 794, 803–08 (E.D. Cal. 2023); *United States v. Rowson*, 652 F.Supp.3d 436, 463–72 (S.D.N.Y. 2023); *United States v. Jackson*, 661 F.Supp.3d 392, 408–15 (D. Md. 2023); *United States v. Gore*, 2023 WL 2141032, at *3–4 (S.D. Ohio 2023); *United States v. Kelly*, 2022 WL 17336578, at *3–6 (M.D. Tenn. Nov. 16, 2022); *see also United States v.*

some have held that § 922(n) is not sufficiently similar to historical analogues[34]—particularly to surety laws.[35]

The government makes three arguments that § 922(n) comports with history and tradition: First, that "[t]he historical tradition of detaining defendants charged with serious crimes supports restricting their rights to receive guns while charged with a felony offense"[36]; second, that "[t]he tradition of disarming dangerous or untrustworthy people supports the restriction imposed by" § 922(n)[37]; and finally, that "[s]urety laws establish a historical tradition sufficient to support modern gun restrictions on defendants charged with felony offenses."[38] Because the court finds the first basis sufficient, it need not examine the remaining two.

*Bruen* and *Rahimi* instruct the court to examine why and how the regulation burdens a citizen's Second Amendment rights.[39] In doing so, the court must ascertain whether the challenged regulation "impose[s] a comparable burden on the right of armed self-defense" to that imposed by a historically recognized regulation.[40]

The court begins by examining why § 922(n) was enacted and whether it imposes a comparable burden with a historical analogue. What is now codified at 18 U.S.C. § 922(n) originally prohibited only individuals under indictment for a crime of violence from shipping or

---

*Holden*, 70 F.4th 1015, 1017–18 (7th Cir. 2023) (observing, for purposes of a discussion of 18 U.S.C. § 922(a)(6), that it is unlikely that § 922(n) "would be held invalid across the board"); *United States v. Yancey*, 2024 WL 317636, at *2 (8th Cir. 2024) (holding the district court did not commit plain error by rejecting a Second Amendment challenge to § 922(n)).
[34] *Quiroz*, 629 F.Supp.3d at 518–21; *Stambaugh*, 641 F.Supp.3d at 1190–93; *Hicks*, 649 F.Supp.3d at 362–66.
[35] Surety laws "authorized magistrates to require individuals suspected of future misbehavior to post a bond. If an individual failed to post a bond, he would be jailed. If the individual did post a bond and then broke the peace, the bond would be forfeit." *Rahimi*, 602 U.S. at 695.
[36] Gov.'s Resp. at 10.
[37] *Id.* at 17.
[38] *Id.* at 20.
[39] *Bruen*, 597 U.S. at 29; *Rahimi*, 602 U.S. at 692.
[40] *Bruen*, 597 U.S. at 29.

receiving firearms.[41] In 1961, Congress amended the statute to apply not only to crimes of violence, but to felonies generally.[42] The 1961 amendments were meant to enable the FBI to better "assist local authorities in the common assault against crime" and to "make it more difficult for the criminal elements of . . . society to obtain firearms."[43] And in 1968, Congress again expanded the statute to cover both state and federal indictments.[44] The 1968 amendments were meant to

> provide support to Federal, State, and local law enforcement officials in their fight against crime and violence, and it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms[.][45]

This history, and Congress's purpose statement, support that § 922(n) was enacted out of a concern that individuals charged with felonies were too dangerous to ship, transport, or receive firearms.[46] This is why the right was burdened. Similarly, as other courts have noted, the law during the founding-era provided for pretrial detention of defendants charged with serious crimes to keep the public safe while the defendant was being tried.[47] Accordingly, the purpose of Section 922(n) as presently constituted is similar to the historical purpose of detaining those accused of serious crimes pretrial.

---

[41] Pub. L. No. 75-785, § 2(e), (f), 52 Stat. 1250, 1251 (1938).
[42] Pub. L. No. 87-342, § 2, 75 Stat. 757, 757 (1961).
[43] S. Rep. No. 87-107, at 10229 col. 1 (June 13, 1961); *see also* H.R. Rep. No. 87-107, at 20248 col. 2 (Sept. 19, 1961).
[44] Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1216 (1968) (defining "indictment" as "an indictment or information in any court").
[45] *Id.* § 101.
[46] *See United States v. Quiroz*, No. 22-cv-50834, 2025 WL 79718, at *3 (5th Cir. Jan. 13, 2025) ("Congress enacted § 922(n) to protect the public from the danger of illegal firearm use by indictees."); *United States v. Gore*, 118 F.4th 808, 814 (6th Cir. 2024) ("§ 922(n) furthers public safety and protects the integrity of the criminal process in the time between charge and conviction or acquittal.").
[47] *See Quiroz*, 2025 WL 79718, at *3; *United States v. Perez-Garcia*, 96 F.4th 1166, 1184 (9th Cir. 2024); *Gore*, 118 F.4th at 814.

Next, the court turns to how § 922(n) accomplishes its restriction—namely, whether it imposes a comparable burden to pretrial detention. Section 922(n) imposes a temporary restriction on an individual's Second Amendment rights, as it applies only so long as an individual is under indictment for a felony. This is consistent with pretrial detention, which was also a temporary restriction on an individual's constitutional rights who had not yet been found guilty of a crime. In fact, § 922(n) is a lesser restriction than pretrial detention, in that it does not accomplish a full disarmament, but instead prohibits only shipping, transporting, or receiving firearms. And, of course, it also is a lesser restriction in that it burdens only this partial aspect of the right to bears arms, whereas pretrial detention deprives the detainee of numerous other liberties as well.

Of course, at the founding, individuals would not be subject to pretrial detention if they made bail. However, many modern-day felonies were historically capital offenses, which would commonly result in detention prior to trial.[48] Detention for serious crimes was the rule, not the exception. Accordingly, the court concludes that the government has met its burden of showing that § 922(n) is relevantly similar to pretrial detention at the founding. It has a similar purpose, and it effectuates that purpose through a much lesser burden than pretrial detention.

Mr. Ciarmataro does not argue otherwise or even address pretrial detention at all. Instead, he briefly cites three district court cases which found § 922(n) unconstitutional. The only case he cites at length, *United States v. Quiroz*, was recently reversed by the Fifth Circuit.[49] The other two district court cases found that surety laws were insufficiently analogous to § 922(n).[50]

---

[48] *See Quiroz*, 2025 WL 79718, at *4–5.
[49] *Quiroz*, 2025 WL 79718, at *3.
[50] *Hicks*, 649 F.Supp.3d 357; *Stambaugh*, 641 F.Supp.3d 1185.

Because the court finds that the pretrial detention analogue is sufficient to uphold § 922(n), it does not explore the prospect that surety laws supply an independent analogue, nor the Government's additional argument on going armed laws.

For these reasons, the court finds that 18 U.S.C. § 922(n) does not violate the Second Amendment.[51]

## ORDER

Mr. Ciarmataro's motion to dismiss the indictment is DENIED.

Signed January 27, 2025.

BY THE COURT

_____
David Barlow
United States District Judge

---

[51] Mr. Ciarmataro's motion only identifies a facial challenge to the constitutionality of Section 922(n). However, in his memorandum, he summarily states that Section 922(n) also is unconstitutional as applied. Other than merely noting that he was charged with possession of a firearm and marijuana when he was indicted in this case, Mr. Ciarmataro makes no argument for why an as applied challenge would succeed.